### SAWYER-SMITH CO. v. JOHN DITTMAR & SONS et al.

(District Court, D. Maryland. April 15, 1913.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BOWLING PIN.

The Sawyer patent, No. 1,030,834, for a bowling pin having a ring of indurated fiber set in a groove in the bottom to prevent splitting or chipping, was not anticipated and discloses patentable invention; also *held* infringed.

In Equity. Suit by the Sawyer-Smith Company against John Dittmar & Sons, John Dittmar, John Dittmar, Jr., and William Dittmar. On final hearing. Decree for complainant.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. V. Cushman, of Washington, D. C., and Mann & Co., of Baltimore, Md., for complainant.

Charles Lee Merriken, Charles B. Backman, and William M. Ballou, all of Baltimore, Md., for defendants.

ROSE, District Judge. The complainant is the owner of letters patent No. 1,030,834, issued June 25, 1912, to Edward H. Sawyer and others. Its purpose was to provide more durable pins for bowling alleys. From the rough usage which such pins necessarily receive, their wooden bases are liable speedily to break or chip to such an extent that they no longer will stand upright. The record shows that at least three other inventors had previously sought a remedy for the like evil:

On May 5, 1900, letters patent 649,745 were issued to one Niemeyer. He proposed to undercut the lower extremity of the pin and to spring an elastic base around the projection thus formed.

Scharkopsky, in letters patent 682,498, issued September 10, 1901, thought he had solved the problem by providing a metal ring, which was embodied in, and projected from, the bottom of the pin.

On March 3, 1903, letters patent 721,976 were granted to Stevens. He described a bowling pin with a ring of resilient material around its base. The lower surface of this ring was flush with that of the base of the pin.

According to the recitals of the patent in suit, and to some of the testimony offered at the hearing, none of these devices were altogether satisfactory. The projecting metal base of Scharkopsky damaged the balls, the alley, and the other pins. The rubber bases or rings of Niemeyer and Stevens were themselves quickly cut or broken. These devices had one feature in common. In all of them the base of the pin was in whole or in part formed of a different material from that of which the body was composed. In this respect Sawyer followed in the footsteps of his predecessors. In some other matters he takes his own course. Partly by substituting a ring of indurated fiber for one of metal, principally by making the under surface of such ring flush with the base of the pin and by leaving an outer circle of wood around the inner ring or fiber, he greatly lessens the danger of damaging balls, alleys, and other pins. By using for his reinforcing material a substance which will not readily break, he escapes some of the disadvantages of the Niemeyer and Stevens devices.

His scheme, as shown and described in his drawings and specifications, consists in so setting a ring of indurated fiber in an annular groove or channel cut in the base of the pin that the bottom surface of this ring will be flush with that of the pin, and in giving this ring an outer circumference, which will be very nearly as great as that of the base of the pin itself. In other words, it is part of complainant's design that the outer ring of wood encircling that of fiber shall be very narrow. The evidence shows that pins made in accordance with complainant's device have gone into fairly extensive use, and

that they command at least twice the price which is paid for ordinary pins.

The defendants have been for many years engaged in the business of making bowling pins. The plaintiff, about the time the patent was applied for, employed the defendants to make pins for it according to the patented design. Defendants did so. From the delivery tickets put in evidence it appears that defendants, upon plaintiff's order, manufactured for the latter at least 450 sets of the patented pins and were paid their price for so doing. In the spring of 1912 the plaintiff learned that the defendants had on their own account begun the manufacture and sale of the pins which in its judgment infringe its patent. Business relations were ended. Shortly after the issue of the patent the bill in this case was filed.

The plaintiff's pin as actually made and used appears to be in strict accordance with the drawings and specifications of the patent. The defendants' pin is said to differ from it in two respects. In both there is a cavity at the center of the base of the pin. Bowling pins are now usually so made. Plaintiff in its pin leaves a portion of the wooden base surrounding this cavity. Defendants do not. In their pin the ring of indurated fiber comes up to the hollow space.

The third claim of the complainant's patent reads as follows:

A bowling pin having a body with a circumferential side wall that curves downwardly and inwardly to the bottom, and the said body provided with a circular cavity formed entirely in the under side of the body and whose outermost edge together with the bottom edge of said circumferential wall forms a tapered ring-shaped edge, and a circular indurated filling fitted into said underside cavity—the bottom surface of said filling being flush with the bottom of said tapered ring-shaped edge.

Defendants' pins are provided with a circular cavity formed entirely in the under surface of the body of the pin. In this cavity is fitted a circular indurated filling; the lower surface of said filling being flush with the bottom of the ring-shaped edge of the base of the pin.

There is nothing in the prior art, as far as that is disclosed in this record, to suggest that it is material whether the ring of indurated filling goes to the central cavity or stops short of it. More stress is laid upon the other respect in which the two pins differ. Complainant's claim, as described in its patent, contemplates that the ring of indurated material shall come very close to the outer edge of the base. It is essential that there shall be a wooden ring around the indurated one. The indurated material must not present a sharp edge to balls or alley. That this ring should be thin was highly important. The more exposed, the greater liability to chipping. Moreover, if that which could chip formed only a trifling portion of the whole surface of the base, the stability of the pin was not appreciably affected. In plaintiff's pin this outer ring of wood is very narrow. In defendants' it is apparently two or three times as wide. Compared, however, with the entire surface of the base, it is quite narrow. It may be that the defendants' construction is not as perfect an embodiment of the invention described in the patent in suit as it would have been if the outer wooden ring was of less width. Infringement is not thereby avoided.

At the hearing I had some doubt as to whether what the patent disclosed amounted to invention. From this record it appears that for more than a decade inventors had been unsuccessfully seeking a solution of the problem to which Sawyer addressed himself. He solved it. He succeeded, when others had failed, not merely by using different material from that which they had employed, but by using new material in such a different position or relation to the wooden portion of the pin as to secure, to some extent, at least, a different method of operation. What he accomplished, perhaps, did not require the exercise of a grade of inventive genius much above the lowest, but it did call for that. Ordinary mechanical skill would not have sufficed. Defendants have been in the business of making bowling pins for more than 30 years. For a considerable portion of that time there was a demand for a pin which had the properties the witnesses say plaintiff's has. Defendants were not able to furnish such a pin until plaintiff showed them how it could be done. They knew the plaintiff had applied for the patent. By its direction they had stamped a notice to that effect on every one of the 4,000 or 5,000 pins which they had made for it. Nevertheless, they apparently found that plaintiff's pin was so much better than anything which they had the right to make for themselves that they could not resist the temptation to imitate it.

A decree for an injunction and accounting will issue.